```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
WESTCHESTER DAY SCHOOL,                     :
                                                          02 Civ. 6291 (WCC)
                Plaintiff,                  :

        - against -                         :          OPINION
                                                       AND ORDER
VILLAGE OF MAMARONECK, THE BOARD OF         :
APPEALS OF THE VILLAGE OF MAMARONECK,
MAURO GABRIELE, GEORGE MGRDITCHIAN,         :
PETER JACKSON, BARRY WEPRIN and CLARK
NEURINGER, IN THEIR OFFICIAL CAPACITY       :
AS MEMBERS OF THE BOARD OF APPEALS OF
THE VILLAGE OF MAMARONECK, and ANTONIO      :
VOZZA, IN HIS OFFICIAL CAPACITY AS A
FORMER MEMBER OF THE BOARD OF APPEALS       :
OF THE VILLAGE OF MAMARONECK,
                                            :
                Defendants.
                                            :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

           MORRISON & FOERSTER, L.L.P.
           1290 Avenue of the Americas
           New York, New York  10104

JACK C. AUSPITZ, ESQ.
JOEL C. HAIMS, ESQ.
KYLE W.K. MOONEY , ESQ.                                - and -

    Of Counsel

           BERNSTEIN, LIEBHARD & LIFSHITZ, L.L.P.
           10 East 40th Street, 22nd Floor
           New York, New York  10016

STANLEY D. BERNSTEIN, ESQ.

    Of Counsel                           **Attorneys for Plaintiff**

*Copies Mailed to Counsel of Record*

**A P P E A R A N C E S :**   (continued)

|  |  |
|---|---|
|  | THACHER PROFFITT & WOOD LLP<br>50 Main Street<br>White Plains, New York 10606 |
| KEVIN J. PLUNKETT, ESQ.<br>DARIUS P. CHAFIZADEH, ESQ. |  |
|     Of Counsel | - and - |
|  | THE LAW OFFICE OF JOSEPH C. MESSINA<br>424 Mamaroneck Avenue<br>Mamaroneck, New York 10543 |
| JOSEPH C. MESSINA, ESQ.<br>LISA M. FANTINO, ESQ. |  |
|     Of Counsel | **Attorneys for Defendants** |

**CONNER, Senior D.J.:**

Plaintiff Westchester Day School ("WDS") commenced this action against defendants the Village of Mamaroneck (the "Village"), the Zoning Board of Appeals of the Village of Mamaroneck (the "ZBA"), James Gaita, George Mgrditchian, Barry Weprin and Clark Neuringer, in their official capacities as members of the ZBA, and Antonio Vozza, in his official capacity as a former member of the ZBA, (collectively, the "defendants"). Plaintiff seeks relief under: (1) the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.* ("RLUIPA"), alleging, *inter alia*, that defendants imposed a substantial burden on WDS's free exercise of religion by denying its application to construct a new school building and to renovate and improve other existing buildings on the WDS campus; (2) the All Writs Act, 28 U.S.C. § 1651, alleging, *inter alia,* that the ZBA's denial of WDS's application was arbitrary and capricious and not supported by the evidence in the record; and (3) 42 U.S.C. § 1983, alleging that defendants have, by their actions, deprived WDS of its right to the free exercise of religion.[1] This matter is currently before the Court on defendants' motion to dismiss WDS's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6), and defendants' motion for summary judgment on all claims pursuant to FED. R. CIV. P. 56. For the reasons stated hereinafter, defendants' motion to dismiss is denied in part and granted in part and defendants' motion for summary judgment is denied.

## BACKGROUND

WDS is an Orthodox Jewish day school located in the Village. In October of 2001, WDS submitted to the ZBA an application (the "Application") for a modification of its special permit to

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

allow it to construct a new school building and to renovate and improve other existing buildings on its campus. The remaining facts of this case are set forth extensively in our previous opinions, familiarity with which is presumed. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 236 F. Supp. 2d 349 (S.D.N.Y. 2002) (Conner, J.); *see also Westchester Day Sch. v. Vill. of Mamaroneck*, 280 F. Supp. 2d 230 (S.D.N.Y. 2003) (Conner, J.) (the "2003 Order"); *Westchester Day Sch. v. Vill. of Mamaroneck*, 363 F. Supp. 2d 667 (S.D.N.Y. 2005) (Conner, J.). The relevant procedural history is set forth below.

On August 7, 2002, WDS filed its original Complaint seeking relief under, *inter alia*, RLUIPA and § 1983 alleging that defendants imposed an unlawful and unconstitutional burden upon WDS by denying the Application and thereby obstructing WDS's ability to construct a new school building on its campus. Defendants moved to dismiss the Complaint under Rule 12(b)(6) and WDS cross-moved for partial summary judgment under Rule 56 alleging that the ZBA's rescission of the original negative declaration was unlawful and therefore void and unenforceable.[2] This Court granted WDS's motion for partial summary judgment, thereby rendering defendants' motion to dismiss moot, and found that the ZBA's rescission of the negative declaration violated New York's State Environmental Quality Review Act because it was not properly rescinded and therefore remained in full force and effect. *See generally Westchester Day Sch.*, 236 F. Supp. 2d 349. WDS's Application then proceeded to the special permit phase.

---

[2] A "negative declaration" is a determination by the ZBA that no significant adverse environmental impacts will result and that no Environmental Impact Statement is necessary and therefore the proposed project may proceed to the special permit phase. (Hammerman Decl. ¶ 19, Ex. 9.) The ZBA initially issued a negative declaration to WDS's Application but, after public outcry, rescinded the negative declaration and issued a positive declaration.

2

On May 13, 2003, the ZBA passed a resolution denying the Application. On May 29, 2003, WDS amended its Complaint to challenge defendants' decision to deny the Application under § 2(a)(1) of RLUIPA, 42 U.S.C. § 2000cc(a)(1) and moved for partial summary judgment on its RLUIPA and § 1983 claims. This Court granted summary judgment in favor of WDS and directed the ZBA to grant immediate and unconditional approval of the Application. *See generally Westchester Day Sch.*, 280 F. Supp. 2d 230. However, on September 27, 2004, that ruling was vacated by the Second Circuit's decision in *Westchester Day Sch. v. Vill. of Mamaroneck*, 386 F.3d 183 (2d Cir. 2004) (the "Second Circuit Decision") and the case was remanded to this Court for further proceedings.

On November 5, 2004, with the Court's permission, defendants filed an Amended Answer with six additional affirmative defenses and a motion for leave to file a jury demand, or in the alternative, for the Court to order a jury trial. This Court denied defendants' motion after finding that no new issues of fact had been raised in the Amended Answer and that defendants' failure to make a timely jury demand was the result of a deliberate decision that a jury trial would not be in the defendants' best interests followed by a change of mind after this Court granted WDS's motion for summary judgment in the 2003 Order.

Defendants now seek dismissal of the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) and 56 for the following reasons: (1) the ZBA's denial of the Application does not, as a matter of law, constitute a substantial burden on religious exercise because it was not a complete denial; (2) the purpose of the proposed project is largely secular in nature and therefore does not meet the RLUIPA requirement of "religious exercise"; (3) WDS's submission to the ZBA was based on unsubstantiated and factually inaccurate data and its denial of the Application cannot be deemed

3

arbitrary or capricious; (4) the ZBA's denial of the Application did not deny WDS's right to exercise its religious beliefs; and (5) RLUIPA is unconstitutional. (Defs. Mem. Supp. Summ. J. at 1-21.)

## DISCUSSION

I. **Applicable Legal Standards**

   A. **Standard of Review on Motion to Dismiss Pursuant to Rule 12(b)(6)**

On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *see also Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.). On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)). However, allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

   B. **Standard of Review on Motion for Summary Judgment Pursuant to Rule 56**

Under FED R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The burden rests

on the movant to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255. However, to defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

We will now consider the merits of defendants' arguments with respect to each of WDS's claims.

## II.   WDS's RLUIPA Claim

### A.   RLUIPA is Constitutional

Before we discuss defendants' substantive challenges to WDS's RLUIPA claim, we will address defendants' argument that RLUIPA is unconstitutional.[3] As defendants acknowledge, this argument was presented to and fully considered by this Court in the 2003 Order. *See Westchester*

---

[3] We note that in support of the present motion defendants set forth no new arguments for their assertion that RLUIPA is unconstitutional; rather, defendants merely refer to the arguments presented in their prior opposition to WDS's motion for summary judgment, which was the subject of the 2003 Order.

*Day Sch.*, 280 F. Supp. 2d at 233-39; (Defs. Mem. Supp. Summ. J. at 20.) Consequently, we will not revisit the issue herein and, for the reasons set forth in the 2003 Order, we hold that RLUIPA is a valid exercise of Congress's power under Section 5 of the Fourteenth Amendment, the Commerce Clause, the Establishment Clause and the Tenth Amendment. *See Westchester Day Sch.*, 280 F. Supp. 2d at 233-39. Having established the constitutionality of RLUIPA, we now turn to the issue of whether WDS has established a *prima facie* case under RLUIPA.

### B. WDS's *Prima Facie* Case

"RLUIPA prohibits a governmental entity from applying a land use regulation 'in a manner that imposes a substantial burden on the religious exercise of a person . . . or institution, unless the government demonstrates that the imposition of the burden is in furtherance of a compelling governmental interest; and . . . [the burden imposed] is the least restrictive means of furthering that compelling governmental interest.'" *Westchester Day Sch.*, 386 F.3d at 186 (quoting 42 U.S.C. § 2000cc(a)(1)).[4] RLUIPA defines "'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,'" and provides further that "'the use, building, or conversion of real property for the purpose of religious exercise shall be considered . . . religious exercise.'" *Westchester Day Sch.*, 386 F.3d at 186 (quoting 42 U.S.C. § 2000cc-5(7)(A),

---

[4] RLUIPA provides, in relevant part:
[n]o government shall impose or implement a land use restriction in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution– (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest.
42 U.S.C. § 2000cc(a)(1).

(B)).

To establish a *prima facie* case under RLUIPA, WDS must allege facts sufficient to show that defendants' conduct in denying the Application: (1) imposes a substantial burden; (2) on the "religious exercise;" (3) of a person, institution or assembly. 42 U.S.C. § 2000cc(a)(1). Defendants challenge both the "substantial burden" and "religious exercise" elements of WDS's RLUIPA claim. (Defs. Mem. Supp. Summ. J. at 1-2.)

Viewing the facts as we must, in the light most favorable to WDS, we conclude that the factual allegations contained in the Amended Complaint are sufficient to survive defendants' motion to dismiss with regard to WDS's RLUIPA claim. First, the Amended Complaint clearly states that WDS is a co-educational school with a "dual curriculum of secular and Judaic studies, including the study of the Bible and Jewish history, law and ritual practice, language and culture." (Am. Complt. ¶ 20.) The Amended Complaint further provides that the "[s]tudents at the school convene to pray as part of their schooling and celebrate many of the Jewish holidays, practices and customs as part of the curriculum." (*Id*.) WDS also alleges that the Application involves "additional renovations and new construction to update existing facilities . . . that are *inadequate for activities WDS deems necessary for its educational and religious mission*," and will include "a chapel where students and staff can pray" and "a library and study center containing tomes of Jewish scholarship." (*Id*. ¶ 27 (emphasis added).) Clearly, prayer and Jewish studies fall within the RLUIPA definition of "religious exercise." 42 U.S.C. § 2000cc-5(7)(A), (B). Therefore, WDS has established the "religious exercise" element of an RLUIPA claim.

Second, the Amended Complaint clearly states that existing facilities, those covered by the Application, are "inadequate for activities WDS deems *necessary* for its educational and *religious*

7

*mission.*" (Am. Complt. ¶ 27 (emphasis added).)  WDS also alleges that defendants' denial of the Application "imposes a 'substantial burden' on WDS and impinges on its rights to free exercise of religion" because, *inter alia*, defendants "chose to deny . . . [the] Application entirely." (*Id*. ¶¶ 3, 6.) Therefore, WDS has sufficiently alleged the "substantial burden" element of a RLUIPA claim because, according to the Amended Complaint, the renovations and construction covered by the Application are necessary for WDS to fulfill its religious mission and defendants denied such Application in its entirety.

For the reasons stated above, we conclude that WDS is entitled to offer evidence to support its RLUIPA claim.  Accordingly, we deny defendants motion to dismiss as it relates to WDS's RLUIPA claim.  We will now consider whether defendants have provided sufficient evidence to show that there are no genuine issues of fact and therefore summary judgment is warranted on WDS's RLUIPA claim.

### C.   Summary Judgment

#### 1.   Substantial Burden

Defendants contend that the ZBA's denial of the Application was not a substantial burden on WDS's exercise of religion because it was not a complete denial, as it did not preclude modification. (Defs. Mem. Supp. Summ. J. at 6.)  Defendants also contend that the Second Circuit already determined that the ZBA's denial of the Application was not a complete denial.  (*Id*.) Therefore, according to defendants, because the ZBA's denial of the Application was not a complete denial of the project, the ZBA's actions, as a matter of law, cannot be deemed a substantial burden on religious exercise under RLUIPA.  (*Id*.)  In support of their position, defendants cite the Second

Circuit Decision as well as *Cathedral Church*, a case which they maintain relied upon the Second Circuit Decision in concluding that a complete denial is necessary to state a colorable RLUIPA claim. (*Id.*); *see also Cathedral Church of the Intercessor v. Vill. of Malverne*, 353 F. Supp. 2d 375 (E.D.N.Y. 2005).

WDS maintains that the Second Circuit Decision did not determine that the ZBA's denial of the Application was not a complete denial, nor did it rule that a complete denial is a prerequisite for a colorable RLUIPA claim. (Pl. Mem. Opp. Summ. J. at 10.) According to WDS, the Second Circuit made clear that even where there was not a complete denial, a party could establish a RLUIPA violation in certain situations. (*Id.*) Therefore, notwithstanding the foregoing, WDS argues that the record demonstrates that the ZBA's denial of the Application on May 13, 2003 was a complete denial, but even if the Court finds that it was not, it nonetheless imposed a substantial burden on WDS's religious exercise. (*Id.*)

To begin, we believe that both defendants and *Cathedral Church* have misinterpreted the Second Circuit Decision. The Second Circuit did not conclude that the ZBA's denial of the Application was not a complete denial. *See Westchester Day Sch.,* 386 F.3d at 188-89 ("The court's assessment of the complete, definitive nature of the Board's rulings may very well be correct."). Rather, the Second Circuit concluded that this Court's prior finding, that the ZBA's denial of the Application was a complete denial, was essential to our finding of a "substantial burden." *Id*. The court then concluded that the record did not support our finding that there had been a complete denial and therefore vacated our finding of a "substantial burden." (*Id.*) This is an important distinction.

Furthermore, the Second Circuit did not conclude that a denial which was not complete (i.e., did not preclude modification) could never be found to be a substantial burden under RLUIPA. *Id*.

9

Therefore, to the extent that defendants and *Cathedral Church* rely on the Second Circuit Decision for that premise, we believe such reliance is misplaced. Rather, the court acknowledged the notion that "rejection of a submitted plan, while leaving open the possibility of approval of a re-submission with modifications designed to address the cited problems is *less likely* to constitute a 'substantial burden' than definitive rejection of the same plan . . . ." *Id*. (emphasis added). However, the court also recognized that there are circumstances under which a denial that was not complete could nonetheless constitute a substantial burden on religious exercise. *Id*. ("We recognize that in some circumstances denial of the precise proposal submitted may be found to be a 'substantial burden,' notwithstanding a board's protestations of willingness to consider revisions . . . .").

As far as determining exactly what the aforementioned circumstances are, the Supreme Court has articulated the substantial burden test differently over the years. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988). In *Lyng*, the Supreme Court stated that for a governmental regulation to substantially burden religious activity, it must have a tendency to coerce individuals into acting contrary to their religious beliefs. *Id*.; *see also Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 717-18 (1981) (holding that a substantial burden exists where the government puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . ."). Thus, for a burden on religion to be substantial, the government regulation must compel action or inaction with respect to a sincerely-held belief; mere inconvenience to the religious institution or adherent is insufficient. *See Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995); *see also Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts in this Circuit have concluded that the regulations must have a "chilling effect" on the exercise of religion to substantially burden religious exercise. *See Murphy v. Zoning Comm'n of Town of New Milford*, 148 F. Supp. 2d 173,

188-89 (D. Conn. 2001). However, that a "burden would not be insuperable would not make it insubstantial." *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005) (noting that just because the plaintiff could re-submit its application with a different "planned unit development" did not mean that defendant's denial of its original application was not a substantial burden).

As previously mentioned, the Second Circuit determined that the record before this Court on the 2003 Order did not support a finding that there had been a complete denial of the Application. *See Westchester Day Sch.*, 386 F.3d at 188-89. Our review of the current record leads us to conclude that it contains nothing that would persuade us to depart from that determination. However, the record is similarly unpersuasive with respect to a finding that there was not a complete denial of the Application. Defendants have simply not established that there are no material issues of fact. For example, the ZBA's willingness to consider alternative submissions by WDS, if true, is indicative of a denial that was not complete; however, the fact that several members of the ZBA destroyed all of their notes and files pertaining to the Application creates a material issue of fact as to whether the ZBA truly considered the matter to be still open and the Application subject to modification. (Mgrditchian Dep. at 17-20; Jackson Dep. at 7-9.)

Thus, based on the record, we are unable to conclude that there are no material issues of fact as to whether the ZBA's denial of the Application was a substantial burden on WDS's religious exercise. To the contrary, the record highlights the existence of several material questions of fact regarding: (1) whether the ZBA's denial of the Application was, in fact, a complete denial and therefore a substantial burden on WDS's religious exercise; and (2) even if the ZBA's denial of the Application was not a complete denial, whether it nonetheless constitutes a substantial burden on

WDS's religious exercise. Consequently, WDS's RLUIPA claim is not appropriate for resolution via summary judgment, and these issues must be addressed at trial. Accordingly, defendants' motion for summary judgment is denied with respect to WDS's RLUIPA claim.

### 2. Religious Exercise

Because we have determined that a material issue of fact exists as to the substantial burden element of WDS's RLUIPA claim, it is not necessary to address the parties' arguments with respect to the religious/secular dichotomy of WDS's proposed project. However, in view of the fact that we will be considering this issue at trial in the near future, we take this opportunity to note that in the 2003 Order our statement of what constitutes "religious exercise" under RLUIPA was over-broad and not in accordance with the stated legislative intent behind RLUIPA. The Second Circuit has noted that despite the relatively liberal definition of "religious exercise" provided in the Act,[5] the legislative history of RLUIPA suggests that the definition does have limits that must be respected. *See Westchester Day Sch.*, 386 F.3d at 190 n.4. (quoting 146 Cong. Rec. S7774-01, S7776 (July 27, 2000) (cautioning that "'not every religious activity carried out by a religious entity or individual constitutes religious exercise'" and noting that activities or facilities that are owned, sponsored or operated by a religious institution do not automatically fall within RLUIPA's definition of "religious exercise")). Thus, "RLUIPA occupies a treacherous narrow zone between the Free Exercise Clause . . . and the Establishment Clause" and compels states to "pursue a course of neutrality towards

---

[5] Courts in this Circuit have acknowledged that the definition of "religious exercise" set forth in RLUIPA is broader than the definition provided in the Religious Freedom Restoration Act, which defined it as "the exercise of religion under the First Amendment to the Constitution." *Marria v. Broaddus*, No. 97 Civ. 8297, 2003 U.S. Dist. LEXIS 13329, at *45-46 (S.D.N.Y. July 31, 2003) (citations and quotations omitted).

religion, favoring neither one religion over others nor religious adherents collectively over nonadherents." *Id.* (quoting *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 696 (1994)). These principles should be kept in mind in preparing for the upcoming trial.

### III.  WDS's All Writs Act Claim

In Count II of the Amended Complaint, WDS alleges that the ZBA's denial of the Application "was arbitrary and capricious and not supported by evidence in the record." (Am. Complt. ¶ 92.) WDS requests that we invoke our jurisdiction under the All Writs Act, 28 U.S.C. § 1651,[6] and issue a "judgment annulling and setting aside the May 13, 2003 determination of the . . . [ZBA] that denied . . . [WDS's] application for a special permit modification" and order "the immediate unconditional issuance of WDS's special permit modification." However, for the same reasons that we determined, *supra* in Part II., that there are material issues of fact which preclude summary judgment on WDS's RLUIPA claim, we deny defendants' motions to dismiss and for summary judgment with respect to WDS's All Writs Act claim.

---

[6] The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "'provides a tool courts need in cases over which jurisdiction is conferred by some other source' and in such cases . . . 'authorizes a federal court to issue such commands . . . as may be necessary and appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 413-14 (2d Cir. 2002) (quoting *United States v. Tablie*, 166 F.3d 505, 506-07 (2d Cir. 1999); *Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985) (internal quotations and citations omitted)). The All Writs Act "is designed to provide a source of procedural instruments designed to achieve the rational ends of law, . . . , when necessary in the federal court's sound judgment to achieve the ends of justice entrusted to it." *Sprint*, 283 F.3d at 413 (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172-73 (1977)) (internal quotations and citations omitted).

## IV. WDS's § 1983 Claim

To establish a claim for a violation of § 1983, WDS must establish: "(1) that . . . [its] conduct was protected by the First Amendment; and (2) such conduct prompted or substantially caused . . . [defendants'] actions." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) (citing *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994); *Brady v. Town of Coltchester*, 863 F.2d 205, 217 (2d Cir. 1988)).

Defendants do not dispute, and this Court agrees, that WDS has clearly satisfied the first element of a § 1983 claim because the right to exercise one's religious beliefs is a fundamental First Amendment right. *See Cathedral Church*, 353 F. Supp. 2d at 388. However, defendants contend that WDS has failed to satisfy the second element of a § 1983 claim: that defendants' conduct was prompted by or substantially caused by WDS's exercise of religious beliefs. (Defs. Mem. Supp. Summ. J. at 19.) According to defendants, "a careful read of the amended complaint finds it devoid of any facts to indicate that the ZBA's denial of the Application was due to the alleged 'religious nature' of the project or substantially caused by Plaintiffs' right to exercise its religious beliefs." (*Id.*) We agree.

In the Amended Complaint, WDS alleges that the denial of the Application "has everything to do with influential community opposition to WDS . . . and the machinations of local politics, which are exactly the types of unlawful and abusive behavior against which RLUIPA was enacted to protect." (Am. Complt. ¶ 6.) However, WDS fails to make a connection between defendants' allegedly "unlawful and abusive behavior" and WDS's exercise of its First Amendment rights. In fact, the factual allegations in the Amended Complaint give no indication that defendants' actions with respect to WDS were inspired by a motive to discriminate or retaliate against WDS on the basis

of its religious affiliation. To the contrary, the Amended Complaint clearly alleges that defendants' actions were inspired by community opposition to the project in general. Furthermore, there is no allegation that the community opposition itself was motivated by religious prejudice.

We recognize that allegations involving a defendant's retaliatory or discriminatory motive and intent can be difficult to plead with specificity in a complaint and therefore the Second Circuit has held that, where sufficient facts are alleged, "retaliatory intent on the part of . . . [a defendant] reasonably may be inferred." *Gagliardi,* 18 F.3d at 195 (citing *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) (per curiam); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979)) (noting that Rule 9(b) of the FED. R. CIV. P. provides that malice, intent, knowledge and other conditions of the mind may be inferred in certain appropriate circumstances). However, in cases where the court has drawn such an inference the plaintiff has alleged at least some facts regarding the defendant's state of mind that, if proven, could constitute a constitutional violation. *See Dougherty*, 282 F.3d at 91-92 (noting that plaintiff alleged specific facts displaying a general pattern of egregious treatment by defendants); *see also Gagliardi*, 18 F.3d at 195 (noting that plaintiffs provided detailed allegations of a chronology of events from which an inference could be drawn that defendants' actions were motivated or substantially caused by plaintiffs' exercise of their First Amendment rights); *but see Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 39 (1st Cir. 1992) (noting that where there was an absence of facts alleged in the complaint to support plaintiff's claim that permits were denied in retaliation for plaintiff's political views or for some other constitutionally impermissible reason, retaliatory intent may not be inferred). In the case at bar, unlike the plaintiffs in *Dougherty* or *Gagliardi*, WDS has not alleged any facts tending to show that defendants' denial of the Application was prompted or caused by the religious nature of the school, the project or by WDS's exercise of

15

religion. Rather, the crux of the Amended Complaint appears to be that defendants denied the Application due to local politics and general public opposition to the expansion project.[7]

Consequently, because WDS has not adequately pled "the requisite nexus between the exercise of its First Amendment rights" and defendants' conduct, we do not believe it would be reasonable to draw such an inference in this case. *Gagliargi*, 18 F.3d at 195; *see also Graham v. Henderson*, 89 F.3d 75, 79-82 (2d Cir. 1996) ("Conclusory allegations of racial discrimination are insufficient to maintain a § 1983 action."); *Murphy*, 833 F.2d at 108-09 (noting that for purposes of a § 1983 claim, "alleging merely the ultimate fact of retaliation is insufficient"). "If this were not so, a party entirely lacking in a cause of action could sue first and then 'fish' to see if he could discover a cause of action." *Nestor Colon*, 964 F.2d at 39. Accordingly, WDS has failed to establish a *prima facie* case for a violation of § 1983, and defendants' motion to dismiss is granted with respect to that claim.

---

[7] While we agree that the ZBA's decision should not have been improperly influenced by local politics, it is not conduct that is actionable under § 1983.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss is denied with respect to plaintiff Westchester Day School's Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim (Count I) and its All Writs Act claim (Count II), but granted with respect to plaintiff's 42 U.S.C. § 1983 claim (Count III), which is hereby dismissed without prejudice. Additionally, defendants' motion for summary judgment is denied with respect to plaintiff's RLUIPA and All Writs Act claims (Counts I and II).

SO ORDERED

Dated: White Plains, New York
       July 27, 2005

_____
Sr. United States District Judge

17